[L. A. No. 15473. In Bank.—April 30, 1936.]

G. VIRGINIA KAYSSER, Appellant, v. GUY McNAUGH-TON et al., Respondents.

Griffith & Thornburgh and Butcher & Haines for Appellant.

Pillsbury, Madison & Sutro, F. D. Madison, Marshall P. Madison, Gerald S. Levin, Lawler & Degnan, Max Felix, Garnet C. Rainey and Edward D. Neuhoff, as *Amici Curiae* on Behalf of Appellant.

E. W. Squier and J. F. Goux for Respondents.

Frank M. Gunter and MacCutchen, Olney, Mannon & Greene, as *Amici Curiae* on Behalf of Respondents.

SHENK, J.—The main question presented on this appeal is whether stockholders in a corporation are proportionately liable for the debts incurred by the corporation between November 4, 1930 (the date of the repeal of article XII, section 3, of the Constitution) and August 14, 1931 (the effective date of the repeal by the legislature of sec. 322, Civ. Code). Stated another way, did the repeal of the constitutional provision repeal the provision of the Civil Code dealing with the same subject?

The question is presented on the following state of facts. Appellant, as assignee of certain claims against the Mortgage Securities, Inc., of Santa Barbara, a California corporation, brought this action against respondents, stockholders of the corporation, when the debts were originally incurred, in an attempt to collect from the stockholders named their alleged proportionate stockholders' liability. The debts which form

the basis of this action were all evidenced by negotiable promissory notes and were originally contracted, in the amounts set forth in the complaint, by the corporation with appellant's assignors, subsequent to November 4, 1930, but prior to August 14, 1931. Suit was filed in April of 1933. The complaint was in eight counts. Respondents demurred generally and specially. The demurrers were sustained without leave to amend. Appellant promptly filed a motion for leave to amend. The trial court denied the motion, judgment was entered dismissing the complaint, and this appeal perfected. In view of the motion for leave to amend, on this appeal we are concerned solely with the problems raised by the general demurrers. The main problem thus presented, as above indicated, is the date upon which the stockholders' liability was repealed.

Prior to its repeal on November 4, 1930, article XII, section 3, of the Constitution, read in part as follows:

"Each stockholder of a corporation, or joint-stock association, shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation or association."

Prior to its repeal on August 14, 1931, section 322 of the Civil Code, so far as pertinent here, read:

"Each stockholder of a corporation is individually and personally liable for such proportion of all its debts and liabilities contracted or incurred during the time he was a stockholder as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation.

"Any creditor of the corporation may institute joint or several actions against any of its stockholders, for the proportion of his claim payable by each, and in such action the court must ascertain the proportion of the claim or debt for which each defendant is liable, and a several judgment must be rendered against each, in conformity therewith . . . "

The repealing statute contained an express saving clause, which reads as follows: (Stats. of 1931, p. 444.)

"Section 1. Sections 322 and 322a of the Civil Code are hereby repealed.

"Section 2. The repeal of said sections shall not in any way impair or affect any remedy or any cause of action for any liability incurred or accrued under said sections prior to the time this act takes effect."

On November 4, 1930, article XII, section 1, of the Constitution, was amended to read as follows:

"The legislature shall have power, by general laws and not otherwise, to provide for the formation, organization and regulation of corporations and to prescribe their powers, rights, duties and liabilities and the powers, rights, duties and liabilities of their officers and stockholders or members. All laws now in force in this state concerning corporations and all laws that may hereafter be passed pursuant to this section may be altered from time to time or repealed."

The purpose of this amendment is evidenced by the following language appearing therein: (Stats. 1929, pp. 2238, 2239.)

"For the purpose of removing existing limitations upon the power granted by section 1 of article XII of the Constitution amended as herein proposed, sections 2, 3, 9, 11, 12 and 14 of article XII of the Constitution are hereby repealed."

Article XXII, section 1, of the Constitution, as it has read since the present Constitution was adopted in 1879, and as it now reads, provides:

"That all laws in force at the adoption of this Constitution, not inconsistent therewith, shall remain in full force and effect until altered or repealed by the legislature; and all rights, actions, prosecutions, claims, and contracts of the state, counties, individuals, or bodies corporate, not inconsistent therewith, shall continue to be as valid as if this Constitution had not been adopted. The provisions of all laws which are inconsistent with this Constitution shall cease upon the adoption thereof, except that all laws which are inconsistent with such provisions of this Constitution as require legislation to enforce them shall remain in full force until the first day of July, eighteen hundred and eighty, unless sooner altered or repealed by the legislature."

■ Keeping the above constitutional and statutory provisions in mind, we turn directly to a discussion of the effective date of the repeal of section 322 of the Civil Code.

The solution depends partially at least on an understanding of the history of stockholders' liability in this state. The liability of a stockholder for the debts of the corporation was unknown at common law. (*French* v. *Teschemaker,* 24 Cal. 518.) In this state, no constitutional authority would be required for the imposition of such a liability. Corporations are, of course, creatures of statute and subject to legislative control. The legislature may exercise all legislative powers not denied to it by the state Constitution or not inconsistent with the state or federal Constitutions. In the absence of a constitutional prohibition, the legislature could have passed a statute imposing a stockholders' liability. However, since 1849 and until November 4, 1930, there has existed a constitutional provision that has acted as a restraint or limitation on the legislature's powers. The Constitution of 1849, article IV, sections 32 and 36, contained provisions on the subject. These provisions were not self-executing and, without a legislative enactment, would have been ineffectual to impose any liability. This was one of the holdings in *French* v. *Teschemaker, supra.* In 1853, such a statute was passed. (Stats. 1853, pp. 273, 277.) In the French case, it was held that this statute was consistent with the constitutional provision. In 1872, section 322 of the Civil Code was enacted, the substantive portion of which read substantially as above quoted. This section was based partially on prior statutes, but contained some additions. The section is in two parts. The portion above quoted imposed the substantive liability. The balance of the section dealt with procedure. It is quite obvious that when this section was passed in 1872, the constitutional provision in question not then being self-executing, the code section operated to impose the liability. The Constitution of 1879 included therein article XII, section 3, above quoted, which is practically identical with the substantive provisions of section 322. This constitutional section was self-executing. In *Gardiner* v. *Bank of Napa,* 160 Cal. 577, 586 [117 Pac. 667], it was held that section 322 of the Civil Code was not inconsistent nor in conflict with article XII, section 3, and was, therefore, still in force. After first referring to article XXII, section 1, of the Constitution, above quoted, expressly keeping in effect statutes not inconsistent with the Constitution, and quoting from *Borland* v. *Haven,* 37 Fed. 394, it was stated:

"If, therefore, the provisions of section 322 quoted are not inconsistent with the provisions of article 12, section 3, they are, in express terms, continued in force. As we have already seen, they are clearly not inconsistent, but in all respects in harmony. Under both, the stockholder is liable in the aggregate for his proportion of all debts and liabilities of the corporation contracted while he was a stockholder, and no more. The Constitution does not provide how the liability shall be enforced, whether against each stockholder separately, or all jointly, while the statute goes further, and does so provide for its enforcement, and that provision is not inconsistent with the provision of the Constitution but in the end it reaches the same result. *Larrabee* v. *Baldwin,* 35 Cal. 155, 156, and other cases affirming it, establish this point. Were section 322 to be formally re-enacted now by the legislature, would anybody pretend that it would be inconsistent with the constitutional provision now in question in such sense as to render it unconstitutional and void? I apprehend not. If it would not be inconsistent, and, therefore, unconstitutional, and void, if formally re-enacted, it cannot be inconsistent, and, therefore, repealed now. If it could stand with the constitution upon re-enactment, it can stand with it now. Not being inconsistent, as we have seen, it is in express terms continued in force.''

What, then, was the source of the stockholders' liability subsequent to 1879? In the many cases decided on the subject since that date, some refer to the Constitution as the source of the liability, others to the code section, and many to both. Inasmuch as the Constitution and the code section were for all practical purposes identical, it is obvious that until the constitutional provision was repealed, there was no need to determine whether the code section served to impose the liability. Now that that question is directly presented, it seems clear that prior to 1930 the liability was imposed by both the Constitution and the code section. The repealing provision of the constitutional measure of 1930 did not directly repeal the code section, and we have concluded that it did not repeal it by implication.

█ This conclusion follows from several different premises. In the first place, there is no prohibition in the Constitution, nor is there any general principle of law, which

would prevent the legislature from passing a statute imposing the same liability as is imposed by a self-executing provision of the Constitution, so long as the statute is consistent with the Constitution. In the second place, section 322 was passed at a time when the constitutional provision then existing was not self-executing and, therefore, the code section, as originally passed, served to impose the liability.
■ The Constitution of 1879 did not repeal section 322, but, on the contrary, by article XXII, section 1, it expressly continued it in force. When the constitutional provision was repealed in 1930, there was nothing in the repealing provision indicating an intent to repeal the code section, in fact, the language used, as above quoted, shows simply an intent to release the legislature from the restraints formerly existing. ■ When section 322 of the Civil Code was originally passed, it secured its vitality from the general powers of the legislature as they existed in 1872. No express constitutional authorization was necessary to adopt it and thus create the liability. After 1879, its continued vitality rested upon both that power and article XXII, section 1, of the Constitution. Its effectiveness was never wholly dependent upon article XII, section 3, one of the main purposes of which was to circumscribe the powers of the legislature otherwise vested in that body. Therefore, the repeal of that section did not disturb the continued existence of the code section.

Respondents place some reliance upon the case of *Coombes* v. *Getz*, 285 U. S. 434, 442 [52 Sup. Ct. 435, 76 L. Ed. 866], wherein the court stated that the repeal of another portion of article XII, section 3, "put an end to the rule for the future." The court was there considering the so-called directors' liability, which was to be found solely in the constitutional provision. Obviously, when the constitutional provision was repealed, there was no other source of the liability. That is not the situation here presented.

The problem here involved has been before the courts, both federal and state, on several occasions. In both jurisdictions, the decisions are conflicting. In *Fine & Son* v. *Hall*, (Cal. App.) 21 Pac. (2d) 697, the District Court of Appeal, Third District, held that the stockholders' liability, as imposed by section 322 of the Civil Code, continued until

August 14, 1931. A hearing was granted in that case, but the appeal was dismissed before decision by this court. The United States District Court for the Southern District of California in *In re Motor Transit Terminal Corp.*, 4 Fed. Supp. 841, came to the same conclusion, as did likewise the Court of Appeal for the Fourth Appellate District, in *Rainey v. Michel*, (Cal. App.) 48 Pac. (2d) 147. A hearing in the last named case was granted by this court and an opinion and decision therein is filed concurrently herewith. On the other hand, the United States District Court for the Northern District of California, in *Hoffman v. W. H. Worden Co.*, 2 Fed. Supp. 353, and the Second Appellate District, Division Two, in the present case ([Cal. App.] 46 Pac. (2d) 217), held that the repeal was effective November 4, 1930. For reasons hereinbefore stated, the holdings of the three cases first above mentioned are necessarily preferred.

Another contention of respondents is based upon the fact that, according to the allegations of the complaint, all of the corporate debts upon which the action is predicated were evidenced by negotiable promissory notes. It is argued that as to any corporate indebtedness arising between November 4, 1930, and August 14, 1931, evidenced by a negotiable promissory note, no stockholders' liability arose because of the provisions of section 3099 of the Civil Code. That section provides in part:

"No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided."

It is argued that since respondents' signatures do not appear on the notes, and that since section 3099 of the Civil Code was enacted subsequent to section 322 of the Civil Code, and that since between the dates here involved the sole source of the liability was section 322, it necessarily follows that section 3099, being inconsistent and later in time of passage, and applying to a specific type of liability, must be deemed controlling. The argument cannot be given the effect contended for. The stockholders' liability as it existed prior to August 14, 1931, did not arise out of any written evidence of indebtedness executed by the corporation, such as a promissory note. The liability arose by operation of law from the creation of the debt by the corporation. Such

liability was independent of the note. This was held in *Winona Wagon Co.* v. *Bull,* 108 Cal. 1 [40 Pac. 1077], *Ellsworth* v. *Bradford,* 186 Cal. 316 [199 Pac. 335], and *Tierney & Lawford, Inc.,* v. *Wilshire Cafe Co.,* 209 Cal. 605 [289 Pac. 621]. The respondents are not being sued as parties to a negotiable instrument, but as stockholders, for the liability which attached to them when the indebtedness was incurred. Section 3099 of the Civil Code, therefore, has no application to this case.

This same reasoning disposes of other contentions of respondents with respect to the sixth and eighth counts of the complaints. In the sixth count, it is alleged that on March 12, 1931, one of the appellant's assignors lent to the corporation in which respondents were then stockholders $15,000; that the debt was evidenced by a negotiable note, which is set forth *in haec verba* in the complaint; that upon maturity of the note—June 10, 1931—the note was renewed and a new note payable September 8, 1931, was executed; that on September 8, 1931, the renewal note, together with another note for $5,000, then falling due, was again renewed and a new renewal note executed. The eighth count alleges the creation of a $5,000 indebtedness on June 8, 1931; the execution of a promissory note evidencing the same; also that on September 8, 1931, that note, together with another note then falling due, was renewed, and a new renewal note executed. In both counts it is alleged that interest was paid until December 7, 1931. It is first contended that section 322, having been repealed before the renewal notes were executed, no stockholders' liability attached. This contention is answered by the foregoing conclusions. The stockholders' liability springs from the original indebtedness, not from the note or the renewal note. The date of the renewal note is immaterial, since it is not alleged that it was executed in payment of the old note. (*United States National Bank of Los Angeles* v. *Stiller,* 216 Cal. 324 [14 Pac. (2d) 78].)

The next contention as to these two counts is based upon section 322a of the Civil Code, adopted in 1931. It provides:

"Any shareholder who because of his proportionate stockholders' liability under the statutes heretofore in effect and

not in discharge of his obligation to pay the full consideration agreed to be paid for his shares, has heretofore made or shall hereafter make any payment in discharge in whole or in part of any debt or liability of the corporation shall be subrogated to the extent of such payment to the claim of the creditor against the corporation.''

It is contended that by accepting the alleged renewal notes after section 322a was adopted, the payee, by thus extending the time of payment and modifying the obligation to pay interest, exonerated the stockholders from liability. The theory of this contention is that by said section stockholders have become mere sureties or *quasi*-sureties for the corporation, and that the extension of time released them. The unsoundness of the argument is apparent. Whatever effect section 322a had on the rights of the stockholder as against the corporation, it could not lawfully affect the rights of a creditor against a stockholder without impairing the obligation of contract. As already stated, the sixth and eighth counts are not based on the renewal notes, but on the original obligations. There was no waiver or relinquishment of the original liability. (*Clark* v. *Berlin Realty Co.*, 33 Cal. App. 50 [164 Pac. 333].) Appellant's causes of action were based upon the preexisting obligations, and were necessarily determinable by the law in existence when the obligations arose. The direct and original liabilities on which the present action is based, including the liabilities set forth in the sixth and eighth counts, were created during the life of section 322 and prior to the passage of section 322a. The liability imposed by section 322 was not derivative or secondary, but primary and independent. (*Neilson* v. *Crawford*, 52 Cal. 248.) It was not the liability of a surety but that of a principal debtor. (*Sonoma Valley Bank* v. *Hill*, 59 Cal. 107; *Young* v. *Rosenbaum*, 39 Cal. 646; *Hyman* v. *Coleman*, 82 Cal. 650 [23 Pac. 62, 16 Am. St. Rep. 178]; *Ellsworth* v. *Bradford, supra.*) The relationship between creditor and stockholder prior to August 14, 1931, was contractual. (*Aronson & Co.* v. *Pearson*, 199 Cal. 286 [249 Pac. 188, 51 A. L. R. 1380].) If section 322a purported to change the existing primary liability into one of suretyship; such change would be an unlawful impairment of the obligations of the contract.

For the foregoing reasons, the judgment appealed from is reversed.

Thompson, J., Waste, C. J., Langdon, J., Conrey, J., and Seawell, J., concurred.

Rehearing denied.