[Civ. No. 22077. Fourth Dist., Div. One. Jan. 8, 1981.]

N. PUPKO, Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant and Respondent.

COUNSEL

Thomas & Teaff and John H. Thomas for Plaintiff and Appellant.

Ullar Vitsut, Eugene B. Stern and Judith Ilene Bloom for Defendant and Respondent.

OPINION

**STANIFORTH, Acting P. J.**—Plaintiff N. Pupko's action charged conversion—payment by defendant drawee Bank of America of three checks upon a forged indorsement. Both parties moved for summary judgment. The trial court denied Pupko's motion and granted the bank's. Pupko appeals.

Pupko's declaration in opposition to the bank's motion for summary judgment set forth these facts. Mincey (dba Surf Motors) drew three checks to payee Pupko's order and delivered them to him for value. The checks were drawn on defendant Bank of America. Pupko did not indorse any of the checks but attempted to negotiate them at the bank. The checks were refused payment for insufficient funds. Mincey then stole the checks from Pupko's briefcase, forged Pupko's indorsement, indorsed the checks "Surf Motors" and deposited them in his account at defendant bank. The bank *credited and debited* the checks to the account of Surf Motors. The bank then stamped the checks "paid" and returned them to Mincey. Mincey departed the area abruptly, abandoning his obligation to Pupko. The checks were found in Mincey's effects.

Pupko relies upon California Uniform Commercial Code section 3419, subdivision (1)(c), which provides that an instrument is converted when "[i]t is paid on a forged indorsement." The bank, on the other hand, denies payment and cites California Uniform Commercial Code section 4213, subdivisions (1)(a) and (1)(b).[1]

The bank alternatively argues Mincey's acts were in substance no more than the exercise of his right to stop payment on the checks;

---

[1]California Uniform Commercial Code section 4213 provides in part: "(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first: (a) Paid the item in cash; or (b) Settled for the item without having a right to revoke the settlement under any of the following: statute, clearinghouse rule, agreement, or reservation thereof;..."

Mincey could have torn up the check with the same net effect—no payment made by the bank.

The trial court, in granting the bank's motion for summary judgment, concluded the bank's moving papers showed, as a matter of law, the checks were not "paid."

## DISCUSSION

■ In ruling upon a motion for summary judgment, the prime duty of the trial court is to determine whether there is a triable issue of fact. "By an unbroken line of decision in this state since the date of the original enactment of section 437c, the principle has become well established that issue finding rather than issue determination is the pivot upon which the summary judgment law turns." (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].)

It was stated in *Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, at page 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R. 3d 615]: "Summary judgment is proper only if the affidavits or declarations [fn. omitted] in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue of fact."

■ In resolving the question of whether there was any factual issue to be tried, the trial court was obliged to construe the moving party's declarations strictly and those of Pupko liberally to the end that the latter would not be summarily deprived of the full hearing which would be his due at trial of this cause. (*Freidberg* v. *Friedberg* (1970) 9 Cal. App.3d 754, 761 [88 Cal.Rptr. 451]; *Loree* v. *Robert F. Driver Co.* (1978) 87 Cal.App.3d 1032, 1036 [151 Cal.Rptr. 557].)

The evidence before the trial court demonstrated that the checks had been marked paid and cancelled by the bank. The declaration of Kris Courtney, a bank employee, stated the checks were not in fact "paid" and described the bank's procedure: When the checks were deposited to Surf Motors' account, each check was posted to the depositor's account, and since they were drawn on the same account in the Bank of America, "those checks would be charged to that customer's account." Thus "[a] simultaneous credit and debit on the Surf Motors' account occurred and there was no net change in the account balance." After this posting process was completed, the checks were marked "paid."

■ What constitutes "payment" of an instrument depends upon general principles of law. (See Civ. Code, § 1478; *Sousa* v. *First California Co.* (1950) 101 Cal.App.2d 533, 540 [225 P.2d 955].) However, California Uniform Commercial Code section 4213 specifically defines what acts shall constitute "final payment" by a payor bank. (10 Cal.Jur.3d, Bills and Notes, § 252, p. 249.) Thus commercial paper is "paid" at the time the payor bank performs some act as defined by the statute. (*Demos* v. *Lyon* (1977) 151 N.J. Super. 489 [376 A.2d 1352].)

■ California Uniform Commercial Code section 4213 declares an item is "finally paid" when the item is (1) paid in cash or (2) "[s]ettled for the item without having a right to revoke the settlement under [a] statute, clearinghouse rule, agreement or reservation thereof, . . ." (§ 4213, subd. (1)(a), (b).)[2]

To "settle" is defined in California Uniform Commercial Code section 4104, subdivision (1)(j) as "to pay in cash by clearinghouse settlement, in a charge or credit or by remittance, or otherwise as instructed. A settlement may be either provisional or final."

Settlements contemplated by California Uniform Commercial Code section 4104, subdivision (1)(j), include "payments in cash; the efficient but somewhat complicated process of payment through the adjustment and offsetting of balances through clearinghouses, debit and credit entries in accounts between banks or the forwarding of various types of remittance instruments." (3 Anderson, Cal. Uniform Commercial Code (1971 2d ed.) § 4-104, pp. 175-176.) Thus the very essence of any "settlement" is the parting by the payor bank with a thing of value.

The facts before the trial court indicate neither a cash nor noncash settlement was made as so defined. The entire transaction represented no more than a completed "wash," reflecting only a bookkeeping transaction—entries of a simultaneous credit and debit of the Surf Motors' account. No cash was paid; no charge or credit or remittance of any sort was involved.

A payment, as the term is defined in California Uniform Commercial Code section 4213 was not accomplished by such bookkeeping transac-

---

[2]The California Legislature failed to enact subdivision (c) of the Uniform Act. We examine the causes and consequences of this omission *infra*.

tion. A mere paper or bookkeeping entry of debits and credits is not payment unless payment is *actually* made thereby. (*Security Trust Company* v. *Sherwood Homes, Inc.* (Mo.App. 1968) 436 S.W.2d 776, 778; 5A Michie on Banks & Banking (1973) ch. 9, § 223, p. 596.)

Nor does the mere act of stamping a check "paid" constitute final payment. (*Clark* v. *Berlin Realty Co.* (1917) 33 Cal.App. 50, 53 [164 P. 333]; H. Bailey, Brady on Bank Checks (5th ed. 1979) pp. 14-7, 14-8, 14-16; *Bank of America Nat. T. & S. Ass'n.* v. *Merchandise Nat. Bk.* (9th Cir. 1953) 201 F.2d 68, 75.)

In a precode California decision (*Ocean Park Bank* v. *Rogers* (1907) 6 Cal.App. 678 [92 P. 679]), Widney drew a check on his account at Ocean Park Bank payable to order of Rogers. Rogers indorsed the item and deposited it in the same bank and received a credit in her passbook. The bank stamped the check paid. That night the bookkeeper credited Rogers' account but when he turned to Widney's page (the bookkeeper proceeded alphabetically), he saw the account was overdrawn. The item was immediately marked NSF and the Rogers account was debited. The reviewing court held the bank was within its rights in rejecting payment and the "paid" entry. The use of such stamps and other internal procedures constitute "mere memoranda adopted in aid of the convenient dispatch of business." (*Id.*, at p. 681.) As the court correctly noted, the item may be accepted and marked paid or otherwise credited as a deposit but at the close of business if there are insufficient funds the bank must decide to "pay the check . . . or return the check . . . ." (*Ibid.*)

In *Gibbs* v. *Gerberich* (1964) 1 Ohio App.2d 93 [203 N.E.2d 851, 17 A.L.R.3d 928] (a decision under the U. Com. Code), the court came to a similar conclusion. The maker drew a check on its account to order of Hewitt. Hewitt deposited the item into his savings and loan account which then sent the item for collection. The drawee bank received the item and charged it against the appropriate account but had not cancelled it, the final step in the posting process, when the drawee bank received the Gibbs restraining order. The Ohio court held payment involved two acts: (1) decision to pay, and (2) recording of payment. (*Id.*, at p. 854.) Only one act had occurred, the recording. No decision to pay had been made. Furthermore, the posting process was not complete. Both conditions compelled the conclusion no payment was made; therefore the restraining order was effective.

The concept of completion of the process of "posting" as the point in time when payment is made, as discussed in *Gibbs* v. *Gerberich, supra*, has been rejected in California. California Uniform Commercial Code, section 4213, subdivision (1)(c), was purposely omitted by the California Legislature. As was explained in the California Code comment to section 4213 (23B West Ann. Cal. U. Com. Code (1964 ed.) § 4213, pp. 605-606): "'The proposed deletion of clause (c) of the original subsection [subdivision] is suggested in the light of the practice of California banks of having centralized bookkeeping systems where items are posted first and thereafter sent to the proper branch for checking of signatures, stop payments, and the like. If clause (c) were retained in its present form the unfortunate consequences would be that an item would be considered to be finally paid by a bank before the signature had been verified. This raises the question whether to amend clause (c) to provide that an item is not finally paid until verified and posted or whether it is best to delete it. California bankers and bank lawyers believe it should be deleted because of the uncertainty and indefiniteness of relating "payment" to the procedures of bookkeeping systems, whether mechanical or manual. They prefer to relate "payment" to failure to revoke within the time allotted by statute, clearinghouse rule or agreement.' Marsh and Warren Report, Sixth Progress Report to the Legislature by Senate Fact Finding Committee on Judiciary (1959-1961) Part 1, the Uniform Commercial Code, p. 476."

Thus this rejection of section 4213, subdivision (1)(c), makes the California legislative intent clear—mere recording or posting activities do not constitute payment.

Pupko's reliance upon *Cooper* v. *Union Bank* (1973) 9 Cal.3d 371 [107 Cal.Rptr. 1, 507 P.2d 609], is to no avail. *Cooper, supra*, holds a payee bank is strictly liable to the true owner of a negotiable instrument *if it pays the instrument on a forged indorsement*. Thus Cooper assumes *the fact of payment*.[3]

---

[3]Pupko's reliance upon *City Nat. Bank of Miami, N. A.* v. *Wernick* (Fla.App. 1979) 368 So.2d 934, 936, and *Stone & Webster Eng. Corp.* v. *First National B. & T. Co.* (1962) 348 Mass. 1 [184 N.E.2d 358, 362, 99 A.L.R.2d 628], is equally misplaced. The *Wernick* court reversed a grant of summary judgment on the specific ground no effective delivery of the check ever took place. (P. 936.) The question of "payment" was never reached. In the *Stone & Webster Eng. Corp.* case, the action was by a drawer against the drawee bank where *payment* had been made by a collecting bank on the payee's forged indorsement where there had been no delivery to the payee. Thus the fact of *payment* was not in issue. Neither case is in point.

Here there appears no factual dispute. No cash was paid for the check nor did the bank "settle" for the item as that term is defined by the code. As a matter of law no payment of the check was made. There was no triable issue of fact. In view of this finding, based upon conceded facts and statutory language defining payment, we do not address the bank's alternate assertion that Mincey, the drawer, by his unorthodox action, in effect stopped payment on the check.

Wiener, J., and Butler, J.,* concurred.

A petition for a rehearing was denied January 23, 1981, and appellant's petition for a hearing by the Supreme Court was denied March 11, 1981.

---

*Assigned by the Chairperson of the Judicial Council.